IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re:<br>CHISHOLM OIL AND GAS NOMINEE, INC,<br><br>Reorganized Debtor[1] | : Chapter 11<br>:<br>: Case No. 20-11595 (BLS)<br>:<br>: Docket Nos. 321, 328, 337 |

# OPINION[2]

Before the Court is the Motion of the Reorganized Debtor to Enforce Confirmation Order and Plan (the "Enforcement Motion")[3] filed by Chisholm Oil and Gas Operating, LLC, as a reorganized debtor in the above-captioned Chapter 11 case ("Chisholm"). The Enforcement Motion seeks an order of this Court interpreting and enforcing the Plan and Confirmation Order[4] against Gold Star Energy, LLC ("Gold Star"), Texas Raw Oil and Gas, Inc. ("Texas Raw"), and Oljeinvest, LLC ("Oljeinvest") (collectively, the "Claimants"). More specifically, the question presented addresses the consequence and effect of Chisholm's rejection of certain joint operating agreements (the "JOAs") with the Claimants during the Chapter 11 cases. For the reasons set forth herein, the Court will grant the Enforcement Motion.

## BACKGROUND

Prior to the bankruptcy filing, the Debtors and the Claimants owned certain oil and gas interests in an Area of Mutual Interest (the "Chisholm Trail AMI") comprised of townships in

---

[1] The Chapter 11 cases of the following affiliates of the Reorganized Debtor were closed effective as of October 21, 2020: Chisholm Oil and Gas Operating, LLC; Chisholm Oil and Gas Operating II, LLC; Cottonmouth SWD, LLC; and Chisholm Oil and Gas Management II, LLC (the "Debtors").

[2] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

[3] Docket No. 321.

[4] The Plan and Confirmation Order are both defined *infra*.

Kingfisher County and Garfield County, Oklahoma. Chisholm (and its predecessors) owned and operated oil and gas wells (the "Oil and Gas Interests") in the Chisholm Trail AMI and the Claimants had the opportunity to participate in those oil and gas wells pursuant to a standard Joint Operating Agreement ("JOA").

Relevant to this case, the JOA contains certain provisions to address the parties' interests when one party proposes the drilling of a new oil or gas well. Each party to the JOA must elect to either participate in the drilling of a new well or not. Parties that elect to participate ("Consenting Parties") bear "the entire cost and risk of conducting such operations."[5] The parties that elect not to participate ("Non-Consenting Parties") do not bear the costs or risks of drilling the new well, but instead relinquish their interest in that well to the Consenting Parties until the Consenting Parties have recovered a fixed amount of proceeds from the well.[6] The interests relinquished to the Consenting Parties by the Non-Consenting Parties will "automatically revert" back to the Non-Consenting Parties once sufficient proceeds are recovered from the new well.[7]

---

[5] JOA, Art. VI.2(b).
[6] In particular, the JOA provides:
> Upon commencement of operations for the drilling ... of any such well by Consenting Parties in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties and the Consenting Parties shall own and be entitled to receive, in proportion to the respective interests, all of such Non-Consenting Party's interest in the well and share of production therefrom ... .

JOA, Art. VI.2(b).

[7] In particular, the JOA provides:
> If and when the Consenting Parties recover from a Non-Consenting Party's relinquished interest the amounts provided for above, the relinquished interests of such Non-Consenting Party shall automatically revert to it as of 7:00 a.m. on the day following the day on which such recoupment occurs, and from and after such reversion, such Non-Consenting Party shall own the same interest in such well, the material and equipment in or pertaining thereto, and the production therefrom as such Non-Consenting Party would have been entitled to had it participated in the drilling ... of said well.

*Id.* at 2(d).

2

On June 17, 2020 (the "Petition Date"), the Debtors filed voluntary Chapter 11 bankruptcy cases before this Court. The Debtors filed the "Amended Joint Chapter 11 Plan of Reorganization of Chisholm Oil and Gas Operating, LLC and Its Affiliated Debtors" on August 3, 2020,[8] and the Plan Supplement on September 4, 2020.[9] Schedule D to the Plan Supplement contained a Schedule of Rejected Contracts which included the JOAs with the Claimants.[10] The Court entered an order confirming the Plan on September 23, 2020.[11] The Plan's effective date occurred on October 21, 2020.[12] Pursuant to the Plan and Confirmation Order, Chisholm rejected the Claimants' JOAs as of the Effective Date.[13]

On February 22, 2021, the Claimants filed a lawsuit in the District Court of Tulsa County for the State of Oklahoma (the "State Court").[14] The primary issue in the State Court Action is whether Chisholm has made all requisite production revenue payments to the Claimants from the proceeds of the oil and gas wells in the AMI which Chisholm operates and in which the Claimants own working interests under oil and gas leases. The Claimants filed a motion for partial summary judgment in the State Court Action seeking an order from the State Court to determine (i) whether certain interests vested in Chisholm pursuant to the Plan and Confirmation Order, and (ii) the effect of Chisholm's rejection of the JOAs during the Chapter 11 Cases on Chisholm's and the Claimants' property interests. Chisholm, arguing that this Court has exclusive jurisdiction to determine these issues, filed the Enforcement Motion requesting this

---

[8] Case No. 20-11593, Docket No. 232 (the "Plan").
[9] Case No. 20-11593, Docket No. 275 (the "Plan Supplement").
[10] Case No. 20-11593, Docket No. 275-4.
[11] Case No. 20-11593, Docket No. 322 (the "Confirmation Order").
[12] Case No. 20-11593, Docket No. 371 (the "Effective Date").
[13] Confirmation Order, ¶ 12.
[14] The case was styled as Gold Star Energy, LLC, Texas Raw Oil & Gas, Inc., and Oljeinvest, LLC v. Chisholm Oil & Gas Operating, LLC; Case No. CJ-2021-00516 (the "Action").

Case 20-11595-BLS    Doc 348    Filed 05/08/24    Page 4 of 12

Court to interpret and enforce the Plan and Confirmation Order and determine the effect of Chisholm's rejection of the JOAs in the underlying Chapter 11 Cases.

During the Chapter 11 Cases, on August 25, 2020, the Claimants filed separate proofs of claim in the Debtors' bankruptcy cases for partially liquidated claims. On December 9, 2021, Chisholm and counsel to Simon Advisors, LLC (the appointed General Unsecured Creditor Claims Administrator) filed the "Seventh Omnibus Objection (Substantive) to Claims,"[15] which included objections to the Claimants' Claims. Eventually, Chisholm and the Claimants reached consensual resolution of the objections as described in the agreed orders filed with the Court under Certification of Counsel.[16] The Court entered the agreed orders on September 28, 2023, thereby resolving the Claim Objection and providing final liquidated amounts for the pre-petition claims asserted by the Claimants.[17]

## JURISDICTION AND ABSTENTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Under these sections, "bankruptcy courts have subject matter jurisdiction over four types of matters, pending referral from the district court: '(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.'"[18] "Cases falling under the first three categories are typically referred to as core proceedings, whereas proceedings 'related to' a case under title 11 are designated as non-

---

[15] Docket No. 193 (the "Claim Objection").
[16] Docket Nos. 302, 303, and 304.
[17] Docket Nos. 305, 306 and 307.
[18] *In re Oklahoma Merge, LP*, 2022 WL 2720025, *3 (Bankr. D. Del. Jul. 13, 2022) (quoting *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 621 (Bankr. D. Del. 2016) and 28 U.S.C. § 157)). "Because Congress granted bankruptcy jurisdiction directly to the district court, bankruptcy judges exercise bankruptcy jurisdiction only when the district court refers the case or proceeding to the bankruptcy judge. In the District of Delaware there is a standing order referring all bankruptcy cases and their attendant civil proceedings to bankruptcy judges." *Penson Tech. LLC v. Schonfeld Grp. Holdings LLC (In re Penson Worldwide)*, 587 B.R. 6, 12 (Bankr. D. Del. 2018) (citing United States District Court for the District of Delaware Amended Standing Order of Reference, In re Standing Order of Reference Re: Title 11, February 29, 2012).

4


core proceedings."[19] "The Third Circuit has held that a matter is 'core' if it 'invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'"[20] 28 U.S.C. § 157(b) sets forth a non-exhaustive list of the types of matters that are considered "core" proceedings.[21]

Chisholm argues that this matter falls within the Bankruptcy Court's jurisdiction because the Enforcement Motion asks the Court to interpret and enforce the Confirmation Order and Plan. The Supreme Court has recognized that a bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders."[22] Moreover, determining the effect of the Debtors' rejection of the JOAs on the Claimants' post-confirmation rights is a core matter since it invokes a substantive right provided by title 11 (that is, rejection of an executory contract under Bankruptcy Code § 365).[23] It follows then that the Enforcement Motion falls within this Court's core jurisdiction and the Court possesses statutory and constitutional authority to issue a final order in this matter.

The Claimants argue, however, that the Bankruptcy Court does not have *exclusive* jurisdiction to determine the effect of the Confirmation Order.[24] The Claimants assert that the

---

[19] *Id.* (quoting *Millennium Lab*, 562 B.R. at 621).
[20] *Id.* (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991)).
[21] *Id.* (citing 28 U.S.C. § 157(b)(2)).
[22] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009). The Third Circuit also has determined that a bankruptcy court has jurisdiction to interpret and enforce the discharge and injunction provisions of its plan and confirmation order. *Mesabi Metallics Co., LLC v. B. Riley FBR, Inc. (In re Essar Steel Minnesota, LLC)*, 47 F.4th 193, 201 (3d Cir. 2022).
[23] *Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 728 (Bankr. D. Del. 2009) (challenges to the effect of orders under § 365 are core, as "the rejection and assumption and assignment of leases and executory contracts are fundamental issues of bankruptcy law unique to the Bankruptcy Code."). *See also Point Blank Solutions, Inc. v. Robbins Geller Rudman & Dowd LLP (In re Point Blank Solutions, Inc.)*, 449 B.R. 446, 449 (Bankr. D. Del. 2011) (Deciding that an adversary proceeding concerning the consequences of the court's rejection order and whether, as a result of rejection, escrowed funds were property of the estate, was a core proceeding).
[24] *See In re Skyline Woods Country Club, LLC*, 431 B.R. 830, (8th Cir. B.A.P. 2010) (noting that 28 U.S.C. § 1334(b) confers original but not exclusive jurisdiction on all civil proceedings "arising under title 11, or arising in or related to cases under title 11," and, therefore, the state court had concurrent jurisdiction to interpret a bankruptcy court's sale order).

matter before the Bankruptcy Court requires analysis of complex issues of Oklahoma state law that have not been definitively addressed by Oklahoma courts. Therefore, the Claimants request that the Court should either (i) abstain from deciding the Motion to Enforce and allow the State Court Action to proceed, or (ii) certify one or more questions of law to the Oklahoma Supreme Court to assist it in deciding the issues presented in Chisholm's motion.

Chisholm responds by asserting that, under the Plan and Confirmation Order, this Court retained "exclusive jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in or related to the Chapter 11 Cases."[25] Further, Chisholm argues that abstention or certification of issues to the Oklahoma Supreme Court for this matter is unnecessary, improper, and unwise.

A federal court may abstain from hearing a bankruptcy matter "in the interest of justice, or in the interest of comity with state courts or respect for state law."[26] When evaluating a request for discretionary abstention, courts in this district often look to a variety of factors, including:

(1) the effect or lack thereof on the efficient administration of the estate;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of applicable state law;
(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5) the jurisdictional basis, if any, other than section 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than the form of an asserted "core" proceeding;
(8) feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and

---

[25] Plan, Art. XI; Confirmation Order, ¶ 21.
[26] *Penson Worldwide*, 587 B.R. at 22 (citing 28 U.S.C. § 1334(c)(1)). Mandatory abstention under 28 U.S.C. § 1334(c)(2) is not applicable here because I have determined, *supra.*, that the Enforcement Motion involves core issues arising under title 11.

(12) the presence of non-debtor parties.[27]

The Claimants argue that many of these factors weigh in favor of abstention; namely, the lack of any effect on the estate, since this matter affects only post-petition production revenues; the complex and undetermined issues of Oklahoma property and oil and gas law; and the pending summary judgment motion in the State Court Action. Chisholm disputes the Claimants' assertions, arguing that the main thrust of the Enforcement Motion involves this Court's determination of a core bankruptcy issue: the effect of the Debtors' rejection of executory contracts. Chisholm also disagrees that this matter involves new or complex state law issues, arguing that there are numerous cases and treatises interpreting Oklahoma property law and the application to the JOAs' language.

Evaluating these factors is not a mathematical formula.[28] Courts weigh some factors more heavily than others, particularly the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core.[29] Ultimately, case law teaches that the decision as to whether to permissively abstain is left up to the broad discretion of the bankruptcy court.[30]

Here, the predominance of core bankruptcy issues (such as the effect of rejection of executory contracts and the interpretation and enforcement of the Confirmation Order) weigh heavily against abstention. Although the issues presented also implicate Oklahoma state law, bankruptcy courts are often called upon to consider state law when determining bankruptcy

---

[27] *Penson Worldwide*, 587 B.R. at 22 (citing *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 659 (Bankr. D. Del. 2012)).
[28] *Penson Worldwide*, 587 B.R. at 22 (citing *In re Samson Res. Corp.*, 559 B.R. 360, 373 (Bankr. D. Del. 2016)).
[29] *Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 729 (Bankr. D. Del. 2009).
[30] *Id.*

7

issues.[31] The Court concludes that abstention is not warranted under the facts and circumstances of this case.

Whether to certify a question to the Oklahoma Supreme Court is also within the Court's sound discretion.[32] Because the Court is satisfied that ample case law exists to provide guidance on the Oklahoma property law and oil and gas law issues, and the parties' excellent briefing addresses these points, this Court declines to submit a question for certification.

## DISCUSSION

The issue before the Court is the effect of the Debtors' rejection of the JOAs under Bankruptcy Code § 365 upon certain leasehold working interests relinquished by the Claimants pursuant to the JOAs' Non-Consent Provisions.[33] The Claimants argue that the Debtors' rejection of the JOAs restored the Claimants and Chisholm to tenancy in common status under Oklahoma common law with respect to the oil and gas interests, granting the Claimants the right to immediate payment of their proportionate share of production revenues starting as of the Petition Date.

Chisholm, however, responds that its rejection of the JOAs operates simply as a breach of contract; rejection does not rescind or terminate the contract and return the parties to their positions prior to the contract. Chisholm, therefore, contends that the Claimants' pre-petition relinquishment of rights under the Non-Consent Provisions remains in effect and continues to be binding upon the Claimants after rejection under Bankruptcy Code § 365. The result, Chisholm argues, is that the Claimants will not share in production revenues until Consenting Parties

---

[31] *Point Blank Solutions*, 449 B.R. at 449-50 (noting that bankruptcy disputes involving the application of state law remain core proceedings) (collecting cases).
[32] *The State of the Netherlands v. MD Helicopters, Inc. (In re MD Helicopters, Inc.)*, 641 B.R. 96, 102 (D. Del. 2022) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)).
[33] *See* notes 6-7 *supra.* (the "Non-Consent Provisions).

8

recover certain specified costs under the JOA, following which the parties will be tenants in common with respect to their oil and gas interests under Oklahoma law. A contrary result would provide a windfall to the claimants, according to Chisholm.

Chisholm's position regarding the effect of rejection is firmly founded on well-established precedent. The United States Supreme Court has instructed that "[r]ejection of a contract - - any contract - - in bankruptcy operates not as a rescission but as a breach."[34] The Supreme Court further determined that "rejection does not terminate the contract. When it occurs, the debtor and counterparty do not go back to their pre-contract positions."[35]

The Delaware District Court likewise decided that "an executory contract rejected under § 365(g) is not 'cancelled, repudiated, rescinded, or in any other fashion terminated,'"[36] and, further, noted that:

> [T]he Third Circuit has explained that rejection of an executory contract "does not alter the substantive rights of the parties" to the contract. ... Rather, rejection "both cuts off any right of the contracting creditor to require the estate to perform the remaining executory portions of the contract and limits the creditor's claim to breach of contract."[37]

The *Fleming Companies* court concluded that a contract's arbitration clause survived the debtor's rejection of the contract under § 365.[38] Other courts have observed that "rejection differently affects the unperformed portions of an executory agreement and those provisions of the agreement that, by their nature, are fully executed."[39] As this Court has determined:

> Thus the effect of rejection is to relieve a debtor from future performance under the contract; rejection does not undo past performance under the contract.

---

[34] *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___, 139 S.Ct. 1652, 1661, 203 L.Ed.2d 876 (2019) states that "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease ... ."
[35] *Id.* at 1662.
[36] *Selby's Market Inc. v. PCT (In re Fleming Companies, Inc.)*, 2007 WL 788921, *3 (D. Del. Mar. 16, 2007).
[37] *Id.* (quoting *Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1034 (3d Cir. 1995)).
[38] *Id.*
[39] *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1307 (11th Cir. 2007) (collecting cases).

>  Consequently, to the extent that both or either of the parties have performed under the executory contract, the debtor's rejection has no effect on such performance.[40]

Here, the Debtors' rejection of the JOAs did not unwind the Claimants' elections under the JOAs' Non-Consent Provisions. Those decisions, fully performed prepetition, survive rejection of the contracts under § 365.

The Claimants argue, however, that the Court should not consider the effect of rejection until the Court first determines whether Chisholm had any property right under the JOAs that became property of the estate. If so, then the Claimants contend that the Court can decide whether those rights survived rejection of the contracts at issue.

The Claimants assert that they did not transfer any property rights to Chisholm when they elected not to participate in new oil and gas wells under the JOAs' Non-Consent Provisions. The Claimants argue that it is incorrect to say that an oil and gas lease is a real property conveyance under Oklahoma law because "[a]n oil and gas lease does not give rise to an estate in land; instead it creates an interest or estate in realty which is not per se real estate."[41] Because no property interest existed to survive rejection, the Claimants argue that the parties reverted to tenants in common under Oklahoma law.

Chisholm asserts that the Claimants' argument is an attempt to muddy the waters by conflating real property interests with real estate.[42] Despite not being real estate *per se*, oil and

---

[40] *Taylor-Wharton Int'l LLC v. Blasingame (In re Taylor-Wharton Int'l LLC)*, 2010 WL 4862723, (Bankr. D. Del. Nov. 23, 2010).
[41] *In re Clark Resources, Inc.*, 68 B.R. 358, 359 (Bankr. N.D. Ok. 1986) (citing *De Mik v. Cargill*, 485 P.2d 229, 232 (Okla. 1971)). The *Clark* court determined that the oil and gas lease was neither an unexpired lease nor an executory contract subject to assumption or rejection under § 365. However, at issue here are the JOAs and the Claimants do not argue that the JOAs are not executory contracts subject to rejection under § 365.
[42] *See Hinds v. Phillips Petroleum Co.*, 591 P.2d 697, 699 (Okla. 1979) ("Although ... an oil and gas lease creates an Interest or estate in realty, it is not deemed Per se real estate. In this respect a distinction is recognized in our law between Real estate and an Estate in real property."); *Id.* at 698 ("Whatever name is used, the interest represented is one in land, ....")

gas leases are real property interests and are capable of being transferred.[43] A JOA is a contract to be construed like any other contract.[44] The JOAs here provide that parties electing not to participate in a new well relinquish their interests in that well to the Consenting Parties until the Consenting Parties have recovered a fixed amount of proceeds from the well. The Court rejects the Claimants' argument that the Claimants could not transfer (or relinquish) any interest to Chisholm under the JOAs when they elected not to participate under the Non-Consent Provisions.

All of this is to say that, despite the Claimants' assessment of Oklahoma oil and gas law, the analysis regarding the effect of rejection of the JOAs under Bankruptcy Code §365 does not change. Courts have recognized that "rejection 'does not embody the contract-vaporizing properties so commonly ascribed to it … Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear.'"[45] For the reasons already discussed above, the Debtors' rejection of the JOAs did not affect the Claimants' elections under the Non-Consent Provisions of the JOAs.

---

[43] *Hinds*, 591 P.2d at 699 ("An exclusive right in the nature of profit a prendre, if granted in gross, may be transferred in gross, either in whole or in part. Divisibility is permissible so long as the servient owner's estate does not become burdened beyond the terms of the grant.").

[44] *Pitco Production Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003).

[45] *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007) (quoting *Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992)).

CONCLUSION

For the reasons set forth above, the Enforcement Motion will be GRANTED. The parties shall confer and submit an appropriate Order consistent with this Opinion within seven (7) days of the date hereof.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

Dated: May 8, 2024